IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

BARBARA ELAMIN,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )
                                   )    No. 2:13-cv-02786-JPM-tmp
CAROLYN W. COLVIN,                 )
Commissioner of Social             )
Security,                          )
                                   )
        Defendant.                 )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff Barbara Elamin brought this action for judicial review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act") and her application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act.

For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

I.   **BACKGROUND**

     **A.   Factual Background**

Elamin was born on June 3, 1962, and at the time of her hearing before the ALJ, was forty-nine years old.  (R. 38, 40.) Elamin is five feet and seven and one-half inches tall and weighs 265 pounds.  (R. 40.)  She completed the eleventh grade of high school.  (Id.)  She also reported that she completed one

year of college and received her nursing assistant certification in 1981. (R. 173.) Elamin worked sporadically in packing and shipping in various warehouses from 2005 until February or March 2010. (R. 40-41, 174.) Prior to that, she worked as a cashier, an order clerk, and a welder for several different businesses. (R. 174.) According to Elamin, she was laid off from her last job because she could not keep up with the work and because she missed work twice in three weeks to attend doctor's visits. (R. 41.)

Elamin suffers from chronic back pain, inflammatory bowel syndrome, obesity, and bipolar disorder. (R. 23.) She alleges a disability onset date of October 1, 2008. (ECF No. 16 at 1.) Specifically, Elamin explained at the ALJ hearing that "the swelling in [her] leg and ankle, and [her] back pain" and her inability to get along with others prevent her from working. (R. 41-42.) Elamin stated that, on an average day, her pain level is an eight out of ten, even with medication. (R. 44.) Elamin stated, however, that she did prepare her own meals, wash dishes, sweep, do laundry, make her bed, and shop for groceries. (R. 45, 191-92.) Although Elamin stated that she does not "have the energy to socialize anymore," she does talk to her mother on the phone and sometimes goes to church or to visit others. (R. 193-94; see also R. 46.) At the ALJ hearing, Elamin also complained that she experienced drowsiness as a result of her

medications. (R. 42.) Elamin has not returned to work since being laid off in 2010. (R. 40-41.)

**B.  Procedural Background**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on April 14, 2010. (See R. 128-29.) Plaintiff also filed a Title XVI application for supplemental security income on the same day. (R. 135-38.) Plaintiff alleged that she suffered from chronic back pain, inflammatory bowel syndrome, obesity, and bipolar disorder since October 1, 2008, which rendered her unable to work. (See R. 23, 128, 172.)

Plaintiff's applications were denied initially on October 1, 2010, and upon reconsideration on March 21, 2011, by the Social Security Administration. (See R. 62-65.) Plaintiff then requested a hearing before an administrative law judge ("ALJ") (see R. 80-81), which was held on February 2, 2012 (see R. 36).

On March 7, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. (R. 21-30.) Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: history of back pain, inflammatory bowel syndrome,

3

obesity and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and walk for only four hours in an eight-hour day. She can push and pull bilaterally with her legs no more than frequently. The claimant can frequently balance, stoop or crouch but can only occasionally kneel, crawl and climb ramps or stairs. She should never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to hazards such a[s] machinery and heights. Mentally, the claimant is able to understand and remember one to three step tasks and instructions on a regular and continual basis. She is able to sustain concentration, persistence and pace for at least 2-hour periods without unusual distraction or need for special supervision. The claimant is able to interact with a small group, on a one-on-one basis and can have occasional or superficial general public interaction. She is able to get along with supervisors and coworkers and is able to adapt to routine, but not frequent or fast-paced changes in a work setting.

. . . .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

7. The claimant was born on June 3, 1962 and was 46 years old, which is defined as a younger individual

age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008, through [March 7, 2012] (20 CFR 404.1520(g) and 416.920(g)).

(R. 23-29.)

On May 4, 2012, Plaintiff timely filed a request for review of the hearing decision. (R. 14.) On August 8, 2013, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1-5.) Plaintiff then filed the instant action, requesting reversal of the decision of the Commissioner or a remand. (See Compl. at 2, ECF No. 1.)

On March 5, 2014, Plaintiff filed a memorandum in opposition to the Commissioner's decision. (ECF No. 16.) Defendant filed a memorandum in support of the Commissioner's decision on April 4, 2014. (ECF No. 17.)

## II.  **LEGAL STANDARD**

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

A district court's review is limited to the record made in the administrative hearing process.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  The purpose of this review is to determine whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied.  See Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 854 (6th Cir. 2010); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604-05 (6th Cir. 2009).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  "'Substantial evidence' is more than a mere scintilla of evidence, but less than a preponderance."  Bell v. Comm'r of

Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (quoting Consol.
Edison, 305 U.S. at 229).

The Commissioner, not the district court, is charged with
the duty to weigh the evidence, to make credibility
determinations and resolve material conflicts in the testimony,
and to decide the case accordingly.  See Bass v. McMahon, 499
F.3d 506, 509 (6th Cir. 2007).  When substantial evidence
supports the Commissioner's determination, it is conclusive,
even if substantial evidence also supports the opposite
conclusion.  See Foster v. Halter, 279 F.3d 348, 353 (6th Cir.
2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en
banc).

## III. ANALYSIS

### A.   Administrative Determination

The Social Security Act defines disability as the
"inability to engage in any substantial gainful activity."  42
U.S.C. § 423(d)(1).  The claimant bears the ultimate burden of
establishing an entitlement to benefits.  Born v. Sec'y of
Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  "A
prima facie case is established if the claimant shows a medical
basis for an impairment that prevents him from engaging in his
particular occupation."  Hephner v. Mathews, 574 F.2d 359, 361
(6th Cir. 1978).  The burden then shifts to the Commissioner to
demonstrate the existence of available employment compatible

7

with the claimant's disability and background.  <u>Id.</u> at 362;

<u>Born</u>, 923 F.2d at 1173.

The Commissioner conducts the following five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1.  An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3.  A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5.  If an individual cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

<u>Long v. Comm'r of Soc. Sec.</u>, 375 F. Supp. 2d 674, 676-77 (W.D. Tenn. 2005) (citing <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683-84 (6th Cir. 1992)); 20 C.F.R. § 404.1520(a)(4); <u>accord</u> <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 238 (6th Cir. 2002).  "Further review is not necessary if it is determined that an individual is not disabled at any point in

this sequential analysis." <u>Long</u>, 375 F. Supp. 2d at 677 (citing 20 C.F.R. § 404.1520(a)).

In the instant case, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff was capable of performing work as a final assembler or table worker, considering her residual functional capacity. (R. 29.)

**B.    Review of ALJ Decision**

Plaintiff argues the ALJ erred as a matter of law by (1) "failing to comply with the regulations in evaluating the opinion of Elamin's treating physicians, Dr. Bailey and Dr. Hungerford"; and (2) "failing to consider or discuss the relevance of Elamin's borderline age situation in this case." (ECF No. 16 at 8.) The Court disagrees.

**1.    Consideration of Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ failed to articulate a valid basis for rejection of the opinion of the treating physicians, Dr. Bailey and Dr. Hungerford. (ECF No. 16 at 8-13.) Defendant contends that the ALJ properly discounted this opinion because it was not supported by objective medical evidence. (ECF No. 17 at 4-9.)

Under the regulations, an ALJ must articulate good reasons for crediting or not crediting the opinion of a "treating source." <u>See</u> <u>Smith v. Comm'r of Soc. Sec.</u>, 482 F.3d 873, 875-76 (6th Cir. 2007); <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541,

544-45 (6th Cir. 2004).  A "treating source" is defined as a
plaintiff's "own physician, psychologist, or other acceptable
medical source who provides [the claimant], or has provided [the
claimant], with medical treatment or evaluation and who has, or
has had, an ongoing treatment relationship with [the claimant]."
20 C.F.R. § 404.1502; see 20 C.F.R. §-404.1513(a) (defining
"acceptable medical sources").  "Good reasons" are those that
are "sufficiently specific to make clear to any subsequent
reviewers the weight the adjudicator gave to the treating
source's medical opinion and the reasons for that weight."
Rogers, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at
*5 (July 2, 1996)).

The ALJ properly discounted the opinion of Plaintiff's
treating physicians, Dr. Bailey and Dr. Hungerford.  Considering
the opinion of Dr. Bailey, and declining to give it controlling
weight, the ALJ stated:

> Treating source Dr. James Bailey submitted an
> assessment opining the claimant was limited to a
> restricted range of light work.  Dr. Bailey indicated
> the claimant can lift and/or carry 20 pounds
> occasionally and 10 pounds frequently, sit for 8 hours
> per day and stand or walk for 5 hours per day.  Dr.
> Bailey further indicated the claimant could frequently
> reach, operate a motor vehicle and perform fine and
> gross manipulation.  According to Dr. Bailey, the
> claimant can only occasionally push and pull, climb
> stairs or ladders, balance, bend, stoop and work
> around hazardous machines and she should never work
> around environmental irritants.  Dr. Bailey concluded
> that the claimant would miss more than four days per
> month of work as a result of her impairments.  He

noted that these restrictions were primarily related to mood disturbances and secondary to chronic lower back pain (Exhibit 23F). However, there is no evidence suggesting Dr. Bailey is qualified to assess the claimant's mental functioning, as he appears to treat her for physical, not mental issues. Moreover, Dr. Bailey checked his responses on a form that was apparently given to him by the claimant's representative, and did not specify the clinical findings supporting his assessment. His assessment is conclusory, as he does not provide accompanying documentation to support these restrictions. In light of the above, I gave no weight to Dr. Bailey's conclusory opinion.

(R. 27.)

Thus, the ALJ discounted Dr. Bailey's[1] opinion for three reasons. First, the ALJ found that Dr. Bailey's opinion was "conclusory." Second, the opinion provided for restrictions relating to Plaintiff's mental limitations, which the ALJ believed were outside the scope of Dr. Bailey's treatment. Third, the ALJ discounted the opinion because it was "unsupported by medical evidence and inconsistent with the record as a whole," "particularly the claimant's lack of mental health treatment and reported activities." (R. 28.) Although Dr. Bailey was the treating physician, the ALJ explained that, "[i]n this case, [non-examining sources] Dr. Minnis and Dr. Welch's opinions are given greater weight than that of the

---

[1] Although the ALJ repeatedly refers to the opinion of Dr. Bailey, both Dr. Hungerford and Dr. Bailey signed the relevant opinion (see R. 844) and Plaintiff clarified that Dr. Hungerford was her treating physician under the supervision of Dr. Bailey (see R. 39). To avoid greater confusion, the Court also refers to the opinion as that of Dr. Bailey, although the Court recognizes that Dr. Hungerford was heavily involved in Plaintiff's treatment at MedPlex.

treating physician because the opinion is supported by the evidence, is consistent with the record as a whole, and considered the complete case record (See SSR 96-6p)."  (Id.)

Substantial evidence supports two of the three reasons provided by the ALJ.  As an initial matter, the Court disagrees with the ALJ's characterization of Dr. Bailey's ability to render an opinion regarding Plaintiff's mental impairments. Although Plaintiff sought specialized treatment from Dr. Thompson at the Southeast Mental Health Center from October 2011 to November 2011, Plaintiff also received mental health treatment from Dr. Bailey, her primary care physician.  (See R. 836, 839, 846-61, 863, 868, 873, 877.)  As a primary care physician, Dr. Bailey was qualified to provide an opinion as to Plaintiff's mental health limitations.  See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training in psychiatry, it is well established that primary care physicians . . . 'identify and treat the majority of Americans' psychiatric disorders.'" (citation omitted) (quoting C. Tracy Orleans et al., How Primary Care Physicians Treat Pyschiatric Disorders: A National Survey of Family Practitioners, 142:1 Am. J. Psychiatry 52 (1985))); Whitaker v. Comm'r of Soc. Sec., Case No. 1:14-cv-1090, 2016 WL 1042323, at *4 (W.D. Mich. Mar. 16,

12

2016) (reversing and remanding the ALJ's decision when the ALJ discounted the treating physician's opinion only because he was "a primary care source and hence was not overly involved in the treatment of the claimant's depression and anxiety"). Accordingly, there is not substantial evidence to support this particular reason for discounting Dr. Bailey's opinion.

There is, however, substantial evidence to support the ALJ's other two rationales for discounting Dr. Bailey's opinion, namely that it was conclusory and not supported by the record. Specifically, Dr. Bailey opined that Plaintiff would miss more than four days of work per month due to her impairments or treatment. (R. 844.) He provided no explanation for this restriction, and it is not clear from the record on what basis Dr. Bailey found that Plaintiff would miss more than four days of work per month.

Dr. Bailey completed the physical capabilities evaluation on January 5, 2012. (See R. 844.) Dr. Bailey supervises Plaintiff's treating physician, Dr. Hungerford, who is a resident physician at MedPlex. (R. 39; see supra n.1.) Plaintiff attended appointments with Dr. Bailey usually once per month, and occasionally twice per month.[2] Plaintiff sought

---

[2] Plaintiff had regular follow-up appointments with Dr. Bailey on December 15, 2011, January 5, 2012, and February 2, 2012. (R. 839, 863, 873.) Plaintiff had an appointment for a mammogram screening and a lumbar spine X-ray on January 18, 2012. (R. 866-872.) Plaintiff also scheduled a

additional mental health treatment on three occasions between October and November 2011, but there is no indication that Plaintiff continued mental health treatment after November 2011. (R. 846-61.) Thus, the record does not support Dr. Bailey's opinion that Plaintiff needed to miss more than four days of work per month to receive ongoing medical treatment.

Dr. Bailey's notes regarding Plaintiff's condition also do not support that she would need to miss more than four days of work per month as a result of her impairments. The progress note from Plaintiff's visit to MedPlex on December 15, 2011, indicates that Plaintiff's condition was improving. (See R. 839.) The progress note from Plaintiff's visit to MedPlex on January 5, 2012, the day that Dr. Bailey completed the physical capabilities evaluation, indicates that Plaintiff experienced "[n]o major issues since last visit." (R. 863.) Moreover, although Dr. Bailey stated that the "[r]estrictions [are] primarily related to mood disturbances," Plaintiff had ceased mental health counseling several months prior. (R. 844.)

Accordingly, substantial evidence supports the ALJ's determination that Dr. Bailey's opinion was "conclusory" and was not supported by the record, at least as to certain restrictions. Although the remainder of Dr. Bailey's opinion was similarly "conclusory," the other restrictions opined by Dr.

diabetes consultation for March 20, 2012, and a regular follow-up visit for April 4, 2012. (R. 874-76.)

Bailey did not deviate significantly from the record or from the opinions of state agency medical consultants Dr. Ramona Minnis and Dr. Larry Welch, to which the ALJ gave greater weight. Dr. Bailey's general opinion, however, that the "[r]estrictions [are] primarily related to mood disturbances and secondarily to chronic lower back pain" (R. 844) is not supported by the record. Even Plaintiff's own testimony at the ALJ hearing does not support the opinion that her restrictions are primarily related to her mental health issues. (See R. 41.) Because the ALJ provided two "good reasons" for discounting Dr. Bailey's opinions, and those reasons are substantially supported by the record, Plaintiff's first claim of error fails.

### 2. Consideration of Borderline Age Situation

Plaintiff argues that the ALJ did not properly consider her "borderline age situation" in finding that she was not disabled. (ECF No. 16 at 13-18.) Additionally, Plaintiff argues that the instant case "warrant[ed] application of Grid Rules at 201.09." (Id. at 15-16.) Defendant argues that "the ALJ properly used the grids only as a framework for deciding whether Plaintiff could perform a significant number of jobs that exist in the national economy," as the grids do not account for nonexertional limitations. (ECF No. 17 at 9.) Defendant also argues that, even considering only Plaintiff's exertional limitations using the grids, the relevant grid rules "direct a finding of not

disabled." (Id. at 10.) Additionally, Defendant argues that, when a borderline age situation exists, a plaintiff must show vocational adversities to warrant use of the older age category, which Plaintiff failed to do in the instant case. (Id. at 10-13.)

### a. Consideration of Borderline Age Situation

The Court finds that the ALJ performed an appropriate disability assessment. The ALJ categorized Plaintiff as a "younger person," which spans ages 18 to 49, and is followed by the "closely approaching advanced age" category, which spans ages 50 to 54. (R. 28; 20 C.F.R. § 404.1563(c)-(d).) The regulations provide that, "in some circumstances, [the ALJ] consider[s] that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45." 20 C.F.R. § 404.1563(c). Additionally, there is some flexibility between age categories in "borderline" situations. 20 C.F.R. § 404.1563(b). If an individual is "within a few days to a few months of reaching an older age category," the ALJ can consider whether to use the older age category "after evaluating the overall impact of all the factors" in the case. Id.

The Sixth Circuit has clarified that, "[i]f a claimant presents a borderline situation, the ALJ is directed to decide whether it is more appropriate to use the claimant's

16

chronological age or the higher age." Bowie v. Comm'r of Soc.
Sec., 539 F.3d 395, 397 (6th Cir. 2008). "Under this approach,
the claimant must show progressively more additional vocational
adversity(ies)—to support use of the higher age—as the time
period between the claimant's actual age and his or her
attainment of the next higher age category lengthens." Id.
(quoting Application of the Medical-Vocational Guidelines in
Borderline Age Situations, Soc. Sec. Admin., Office of Hearings
& Appeals, Hearings, Appeals & Litigation Law Manual (HALLEX)
II-5-3-2). This provision "does not impose on ALJs a per se
procedural requirement to address borderline age categorization
in every borderline case." Id. at 399. Where there is no
evidence that the claimant suffered from vocational adversities
justifying placement in a higher age category, the ALJ need not
explicitly address the borderline situation. Id. at 400-01; see
also Caudill v. Comm'r of Soc. Sec., 424 F. App'x 510, 516-18
(6th Cir. 2011).

In this case, the ALJ did not address the possibility that
Plaintiff, approximately three months shy of her 50th birthday
at the time the decision was rendered, presented a "borderline"
situation, and she did not discuss the possibility of using the
"closely approaching advanced age" category. The Court finds
that her failure to do so was not in error. There is no
evidence in this case that Plaintiff suffered from any

additional vocational adversities that justified using a higher age category.  As the ALJ observed, Plaintiff reported that "she is able to prepare meals, walk for exercise, do household chores, and shop," as well as "pay bills, count change, and use a checkbook and savings account." (R. 28.)  Moreover, the ALJ indicated that she did not find Plaintiff's allegations regarding her limitations entirely credible.  (Id.)

Plaintiff maintains that she has vocational adversities because her past relevant work was unskilled and labor-intensive, she has less than a high school education, and her impairments have resulted in significant restrictions.  (ECF No. 16 at 16-17.)  These do not constitute, however, additional vocational adversities as contemplated by HALLEX.  Examples of additional vocational adversities are

> the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting.

HALLEX II-5-3-2 (2003).  Plaintiff's education, work experience, and impairments were considered in the vocational expert's assessment of jobs available in the national economy.  The fact that Plaintiff completed the eleventh grade could not be considered a vocational adversity equivalent to being "barely

literate in English."[3]  Similarly, although Plaintiff previously

worked in unskilled jobs, her past work as a packager, cashier,

and order clerk cannot be considered to be "unskilled jobs in

one isolated industry or work setting."  Additionally, under

HALLEX, the presence of an additional impairment which infringes

upon the remaining occupational base would constitute an

additional vocational adversity.  Plaintiff does not allege an

additional impairment beyond those considered by the ALJ and

incorporated into her residual functional capacity.

Accordingly, despite Plaintiff's contentions, there is no

evidence of additional vocational adversities in the record.

Because there was no showing of additional adversities

justifying use of the higher age category, the ALJ was not

required to explain her use of Plaintiff's chronological age.

Accordingly, the ALJ did not err as matter of law.

### b.    Use of Grids in Evaluating Disability

The Court finds that the ALJ did not err in declining to

explicitly apply the grids in evaluating Plaintiff's

limitations.  "Normally, where a claimant suffers from an

impairment limiting only her strength (i.e., exertional

limitations), the SSA can satisfy its burden through reference

to the grids without considering direct evidence of the

---

[3] Although Plaintiff testified at the ALJ hearing that she completed
only the eleventh grade, she reported on her Disability Report to the Social
Security Administration that she completed one year of college and received a
nursing assistant certification.  (R. 173.)

availability of jobs that the particular claimant can perform."
Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir.
2008). "[W]here a claimant has nonexertional impairments alone
or in combination with exertional limitations, the ALJ must
treat the grids as only a framework for decisionmaking, and must
rely on other evidence to determine whether a significant number
of jobs exist in the national economy that a claimant can
perform." Id. (citing Burton v. Sec'y of Health & Human Servs.,
893 F.2d 821, 822 (6th Cir. 1990)). When both exertional and
nonexertional limitations are present, an ALJ should consider
whether a finding of disabled based on the grids is possible
based on the exertional limitations alone. 20 C.F.R. pt. 404,
subpt. P, app. 2 § 200.00(e)(2).

In the instant case, Plaintiff had both exertional and
nonexertional limitations. As discussed above, the ALJ properly
used Plaintiff's chronological age in categorizing her as a
"younger individual." See supra Part III.B.2.a. Plaintiff's
exertional limitations fell between sedentary and light. (See
R. 24-28.) For an individual with limited education and a work
history consisting of only unskilled work in the "younger
individuals" category, the grids direct a finding of not
disabled for an individual who is capable of sedentary or light
work. See 20 C.F.R. pt. 404, subpt. P, app. 2, rules 201.18,
202.17. Thus, the grids did not direct a finding of disabled

based on Plaintiff's exertional limitations alone. As a result, in determining that there were a significant number of jobs in the national economy that Plaintiff could perform, the ALJ properly relied on the testimony of a vocational expert, rather than basing her decision on the grid rules. The ALJ did not err in performing this analysis; rather, she closely followed the procedure set forth by the regulations and Sixth Circuit precedent.

Because the ALJ did not err in using Plaintiff's chronological age or in declining to rely on the grid rules, Plaintiff's second claim of error fails.

In the instant case, Plaintiff has failed to carry her burden of proof. Plaintiff has not shown that the ALJ applied the incorrect standard or that there is not substantial evidence to support the ALJ's finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED,** this 7th day of July, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE